### LOGAN et al. v. BAXTER et al.

(Circuit Court of Appeals, Ninth Circuit. April 5, 1920. Rehearing Denied May 17, 1920.)

#### No. 3431.

Patents ⚙═328—For creosoting apparatus not infringed.

    The Logan patent, No. 836,592, for an apparatus for treating the butt ends of poles with a preservative, as limited by the prior art, *held* not infringed.

Appeal from the District Court of the United States for the Southern Division of the Southern District of California; Oscar A. Trippet, Judge.

Suit in equity by John T. Logan and the National Lumber & Creosoting Company against J. H. Baxter and W. H. Jordan, doing business as Baxter & Jordan. Decree for defendants, and complainants appeal. Affirmed.

---

⚙═For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

Drew Pruitt, of Los Angeles, Cal., A. L. Jackson, of Ft. Worth, Tex., and Byron C. Parker, of San Francisco, Cal., for appellants.

Frank L. A. Graham and Ford W. Harris, both of Los Angeles, Cal., for appellees.

Before GILBERT and HUNT, Circuit Judges, and WOLVERTON, District Judge.

GILBERT, Circuit Judge. On November 20, 1906, letters patent No 836,592 issued to J. T. Logan for "apparatus for treating butt ends of poles"; the object being to provide means for treating with preserving fluids the butt ends of poles used for telephone, telegraph, electric lights, etc., by what is known as the hot and cold process. The apparatus presents three tanks or vats, into one of which the poles to be treated are placed on end upon bars which are arranged between heating coils. Above the treating vat is a reservoir tank, from which creosote or other fluid runs by gravity through a pipe and a valve. Below the treating vat is a relief tank, into which hot fluid from the treating tank is suddenly discharged by gravity through a large pipe. In operation, as soon as the hot creosote is discharged, cold creosote is let immediately into the treating vat to complete the treatment.

The claim which the appellees are alleged to have infringed is claim 2, which is as follows:

"In an apparatus for preserving wood provided with an open-top vat for containing the butt ends of poles, a supply tank, and a relief tank, coils of pipe located in said vat, bars placed on the bottom of said vat and supporting the poles above said coils of pipe, means for heating said pipe whereby fluid in said vat may be heated, means for sudden removal of hot fluid from said vat and means for delivering immediately cold preserving fluid from said supply tank to said vat after the removal of hot fluid."

The prior art is shown in the following patents: Letters patent No. 69,260, of September 24, 1867, to Charles A. Seely, the invention of August Gotthilff, September 21, 1837, letters patent No. 391, patent to William T. Pelton, April 4, 1871, No. 113,338, and patent to G. S. Valentine, September 18, 1883, No. 285,087. These patents disclose the use of preserving fluid applied to wood, timber, and poles, in treating vats above coils of pipe, with means for heating the same and means for delivering immediately cold preserving fluid after the removal of the hot, and in one of them the use of a second bath applied while cold. In brief, every element of the Logan claim is found in the prior art, except means for the sudden removal of hot fluid from the treating vat. It is obvious that there is nothing patentable in the idea of using a vat with two tanks connected therewith by pipes, and the appellants cannot be heard to say that others shall not use two or more tanks in connection with a treating vat.

The apparatus of the appellee is built in duplicate. It consists of a storage tank on the surface of the ground, a treating vat partially below the surface of the ground, having a steam coil in the bottom and being connected with the storage tank by a 4-inch pipe. At the bottom of the treating tank is a 4-inch pipe, through which the fluid

may be pumped back to the storage tank. In a pit below the treating vat is a cylindrical tank connected by a pipe with the treating vat from a point well above the bottom thereof, so that any excess of liquid in the treating vat might be run into the overflow tank in the pit, but the treating tank could not thereby be drained. This overflow or cylindrical tank was not made in duplicate, but was connected with both the duplicate treating vats and the supply tanks.

The apparatus is operated as follows: After the poles are inserted, the preserving fluid is heated in the treating vat. Thereafter the heat is withdrawn, but the same fluid remains in the vat, where it is allowed to cool; the poles remaining in the single bath 24 hours. In view of the prior art it must be held that the scope of the Logan patent is limited to the apparatus which is described in claim 2; that is, a treating vat fitted with a small pipe to introduce fluid from a supply tank, and a large pipe to permit sudden and immediate discharge by gravity of the hot fluid into another tank, so that cold fluid may be immediately introduced into the treating tank for completing the process of impregnation. The appellees' apparatus has no means by which creosote may be immediately withdrawn from the treating vat into a relief tank. Their cylinder placed below the treating vat has no such office, and without adjustment it could not be so used. Such are the facts as found by the court below, and we find no ground to disturb those conclusions. These differences avoid infringement. We agree with the court below that the appellees "do not and never have infringed the Logan patent."

The decree is affirmed.